**DOCKETED**

JUN 2 8 2004

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED
JUN 2 5 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Pamela G. Cowart, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 03 C 5341 |
| David J. Axelrod & Associates, f/k/a Axelrod & Greenblatt, David J. Axelrod, individually, Wal-Mart Stores, Inc., and Sam's Club West, Inc., d/b/a Sam's Club | ) ) ) ) ) | Judge Manning Magistrate Judge Ashman CLASS ACTION |
| Defendants. | ) | |

## NOTICE OF FILING

PLEASE TAKE NOTICE that on June 25, 2004, the undersigned counsel filed a *Response to Wal-Mart Stores, Inc. and Sam's West, Inc.'s Motion to Dismiss Counts V and VI*, a copy of which is attached hereto and hereby served upon you.

Respectfully submitted,

By _____
One of Plaintiff's Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL 60602
(312) 782-5808

48

## CERTIFICATE OF SERVICE

I, Elaine Burris, paralegal, hereby certify under penalties of perjury pursuant to 28 U.S.C. §1746 that I caused to be served on the following counsel of record the attached *Response to Wal-Mart Stores, Inc. and Sam's West, Inc.'s Motion to Dismiss Counts V and VI* on June 25, 2004 by Fax and Regular Mail to:

Ruth A. Bahe-Jachna
Edward Shin
Greenberg Traurig, P.C.
77 W. Wacker Dr., Suite 2500
Chicago IL 60601
**312-456-8435**

Terry D. Weissman
Christopher Mickus
Neil, Gerber, and Eisenberg
2 N. LaSalle, Suite 2200
Chicago IL 60602
**312-269-1747**

*Elaine Burris*

Elaine Burris, paralegal

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

**FILED**

JUN 2 8 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Pamela G. Cowart, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 03 C 5341 |
| David J. Axelrod & Associates, f/k/a Axelrod & Greenblatt, David J. Axelrod, individually, Wal-Mart Stores, Inc., and Sam's Club West, Inc., d/b/a Sam's Club, | ) ) ) ) ) | Judge Manning Magistrate Judge Ashman |
| Defendants. | ) ) | |

**RESPONSE TO WAL-MART STORES, INC. AND SAM'S WEST, INC.'S
MOTION TO DISMISS COUNTS V AND VI**

**I.     FACTS ALLEGED**

Wal-Mart deprived Plaintiff of her wages without reason or authority and in contravention of

Illinois' wage garnishment laws.  In response to a citation to discover the assets of one Pamela A.

Cowart, Wal-Mart garnished the wages of Pamela G. Cowart.  Despite noticing the name discrepancy,

Wal-Mart remitted these withheld wages to Pamela A. Cowart's judgment creditor, in blatant

disregard of the Citation's withholding provisions.  Because Illinois law provides that withheld wages

cannot be turned over until a court order is entered authorizing the garnishment, Wal-Mart is liable

for its wrongful garnishment and conversion of exempt wages.

**II.     PLAINTIFF PROPERLY ALLEGES A WRONGFUL GARNISHMENT CLAIM**

    **A.     Illinois law expressly recognizes actions for wrongful garnishment**

There is no doubt that a cause of action for wrongful garnishment exists in Illinois.[1]

Although Wal-Mart tries to argue there is no such claim, it does so without citing a single Illinois

---

[1]     *See Neri v. J.I. Case Company*, 207 Ill. App. 3d 409, 411 (2d Dist. 1991) (*citing Foley Brokerage
Co. v. Feldman Brothers Comm'n, Inc.*, 330 Ill. App. 372, 375 (1947) (where defendant unsuccessfully
argued that there was no cause of action for damages resulting from wrongful garnishment proceedings)).

case dismissing a common law wrongful garnishment claim. Instead, Wal-Mart continues to misapprehend the nature of Cowart's claim and advances an argument already rejected by Magistrate Judge Ashman. In granting Cowart leave to amend to include Count V's common law claim, Magistrate Ashman noted that the cases cited by Wal-Mart[2] to support its theory that there is no common law cause of action for wrongful wage deductions involved interpretations of Illinois' garnishment statute in the context of garnishment proceedings.[3] "Such is not the case in this matter. Plaintiff obviously is not initiating a statutory garnishment proceeding. Instead, she has initiated a new action against Wal-Mart based on Wal-Mart's withholding of her wages and remitting them to the judgment creditor without a court order."[4]

Wrongful garnishment actions are thus recognized under Illinois law and are merited where, as here, no indebtedness exists.[5] In *Neri v. J.I. Case*, the Illinois Appellate Court explained that because there is no statutory right to garnish the property of a person who is not a judgment debtor, a cause of action for wrongful garnishment is appropriate. In a <u>factually identical</u> fact pattern to the Plaintiff's case, the *Neri* court affirmed judgment for the wrongfully garnished party.

> In this case, defendant garnished the wrong person's account. Plaintiff was an innocent party, and although defendant, as judgment creditor, had a valid judgment against a person named Michael Neri, defendant had no right to garnish plaintiff's account simply because he had the same name as the judgment debtor. The effect of garnishing the wrong Michael Neri's account was to deprive plaintiff of the use and enjoyment of his money. Therefore, plaintiff proved a common-law cause of action for wrongful garnishment.[6]

---

[2]  These cases appear in footnote 3 of Defendants' memorandum in support of their motion to dismiss.

[3]  *See Cowart v. Axelrod, et al.*, No. 03-C5341, 2004 U.S. Dist. LEXIS 7228, *9 (N.D. Ill. Apr. 27, 2004).

[4]  *Id.*

[5]  *See Neri*, 207 Ill. App. 3d at 412 (garnishment is wrongful when the plaintiff has no cause of action or no indebtedness exists).

[6]  *Id.* at 413 (*citing First State Bank v. Clark*, 202 Ill. App. 283, 285 (1st Dist. 1916)("it is sufficient to aver that the attachment and levy thereof was wrongful; it not being necessary to allege that the attachment was malicious and without probable cause.")

Just like in *Neri*, the Wal-Mart and Axelrod Defendants garnished the wrong person's wages. As shown by Exhibit B to Plaintiff's amended complaint, the Citation to Discover Assets sought the garnishment of Pamela A. Cowart's wages from Wal-Mart. Pamela A. Cowart is not the Plaintiff. In fact, it was Pamela G. Cowart who worked for Wal-Mart and Pamela G. Cowart who has filed the instant lawsuit. Even though Illinois' wage garnishment statute expressly requires an employer to hold, and not remit, a judgment debtor's wages until further order of court approving the garnishment,[7] Wal-Mart turned Plaintiff's wages over to Axelrod: (1) before any court order was entered; and (2) while questioning whether the judgment debtor and the Wal-Mart employee were one and the same.[8]

In light of its conduct, Wal-Mart's attempts to distinguish *Neri* must fail. Plaintiff does not dispute that the *Neri* court held the judgment creditor liable for the wrongful garnishment and that Wal-Mart is not a judgment creditor. But that does not mean the party actually remitting the garnished funds to the alleged creditor, without being authorized by statute to do so, cannot be liable. The *Neri* case did not address that issue.[9] And Wal-Mart cites no case holding that an employer cannot be sued for the unlawful remittance of garnished wages. Plaintiff, however, has such authority and refers the Court to *In re Johnson*,[10] which discusses employer responsibility in the context of wage garnishments.

---

[7]     735 ILCS 5/12-808(b).

[8]     *See* Exhibit C to First Amended Complaint, Answer of Garnishee stating, "The SS# you have provided is for a Pamela G. Cowart..."

[9]     Neither did the *Foley* or *First State Bank* courts. Rather, these cases support the Plaintiff's claim that an action for damages resulting from wrongful garnishment proceedings can be maintained. *See Foley*, 330 Ill. App. at 374 (permitting damages for wrongfully attached property); *First State Bank*, 202 Ill. App. at 287 (allowing injured party to recover damages sustained as a result of wrongful attachment).

[10]     53 B.R. 919 (Bankr. N.D. Ill. 1985).

3

**B.     Wal-Mart, as an employer, is liable in wrongful garnishment for payments it remitted to Axelrod before entry of any court order**

Wal-Mart would have this Court hold that there is no legal theory by which it can be held liable for its disregard of Illinois' statutory garnishment procedures. However, because employers bear responsibility for compliance with 735 ILCS 5/12-808, it makes sense that the wrongfully garnished employee has redress against her employer. First, it is well settled that the employee maintains an interest in any garnished wages until and unless a final wage deduction order is entered by a court of competent jurisdiction.[11] And second, as the court stated in *In re Johnson*:

> Until the court enters the wage deduction order, the debtor maintains an interest in those wages ... Even if the debtor's employer fails to abide by the statute and appear and answer the judgment creditor's interrogatories, the creditor still is not entitled to the amount of wages due from the debtor, but rather gains only a conditional judgment.
>
> This result is compelled by the fact that during the time after the garnishment summons is served by before the wage deduction is ordered, the debtor may contest the creditor's underlying judgment at a wage deduction hearing ...
>
> **This conclusion is supported by the fact that <u>the statute appears to create a cause of action for the debtor against his or her employer</u> if the employer disperses the debtor's wages to the judgment creditor before the court enters a wage deduction order...[12]**

Thus, the Illinois statute provides that the employer is liable to the judgment debtor for any payments unlawfully made before the wage deduction order is entered: "The discharge of an employer is no bar to an action by the judgment debtor for the same claim."[13]

Aside from the statutory and case authority explaining that employers can be liable for improper payments in response to wage garnishment summons, it is especially inappropriate, at the pleadings stage, to find that only one of the Defendants can be liable to Plaintiff when each

---

[11]     *In re Andres*, 212 B.R. 306, 310 (Bankr. N.D. Ill. 1997); *In re Bates*, 161 B.R. 965, 967 (N.D. Ill. 1993).

[12]     *In re Johnson*, 53 B.R. at 924. (Emphasis added).

[13]     735 ILCS 5/12-812.

Defendant named herein is pointing the finger at the other. The Axelrod Defendants contend that it was Wal-Mart who erroneously applied the Citation Notice to the Plaintiff and thus, the liable party.[14] The Wal-Mart Defendants argue that it was Axelrod who is responsible for any wrongful issuance. Not only does Plaintiff's complaint explain how both the Axelrod Defendants and the Wal-Mart Defendants are independently liable for their respective roles in depriving Plaintiff of her wages but also, Wal-Mart can only be discharged from any wrongdoing after a court has ruled on the propriety of the garnishment.[15]

### C. Requiring a court order before remittance of garnished wages protects the employer and the employee

Wal-Mart is just plain wrong when it argues that the requirement of a pay-out order is "solely for Wal-Mart's benefit."[16] Judge Holderman previously considered the purpose behind Illinois' wage garnishment provisions and found that such provisions protect the alleged debtor. In affirming the bankruptcy court's decision that an alleged debtor retained an interest in wages prior to the entry of a wage deduction order, Judge Holderman explained that the propriety of the wage deduction is not determined until the order is entered.[17] That is because it is "entry of a wage deduction order, not the service of summons, [that] deprives a debtor of her interest in deducted wages."[18] The statute provides the alleged debtor with standing to challenge any wage deduction order and requires that a hearing be held.

---

[14]   See Axelrod Defendants' Response to Interrogatory No. 10, attached as Exhibit A hereto.

[15]   In re Bates, 161 B.R. at 966.

[16]   See Defs.' Mem. at p. 3.

[17]   In re Bates, 161 B.R. at 967.

[18]   Id., (citing In re Bates, 148 B.R. 541 (Bankr. N.D. Ill. 1993)). This is of course consistent with notions of due process.

Until the debtor and the debtor's other creditors … have had the opportunity to have a hearing regarding the propriety of the wage deduction and the court enters a wage deduction order, there can be no certainty regarding whether the debtor's wages were properly withheld.[19]

Without waiting for a hearing to occur or a court order to issue, Wal-Mart withheld Plaintiff's wages and preemptively turned them over to Axelrod. Wal-Mart's insistence that it is exempt from liability under Count V because it was legally bound to start withholding Plaintiff's wages misses three crucial points. Wal-Mart ignores that the Axelrod Citation was facially defective, that its own records show it questioned the Citation's underlying merits, and that it turned over the wages prior to any court order. Looking at Exhibit B to Wal-Mart's motion, it is clear that no attorney certification was made as to the existence of a judgment against Pamela G. or Pamela A. Cowart – the certificate of attorney section is unsigned. A further examination of Exhibit B also reveals that the Citation was not directed to a Wal-Mart employee but a person with a different middle initial. How then could it trigger an obligation on Wal-Mart's part to withhold wages from the Plaintiff?

To further confuse the issue and claim that it had no choice but to comply with Axelrod's Citation, Wal-Mart ignores Illinois cases like *In re Johnson* that permit the employee to seek redress against the garnishee/employer and cites to two Louisiana cases interpreting the Louisiana wage garnishment statute. As a threshold matter, Plaintiff notes that the Louisiana plaintiffs were actually debtors. In both the *Sun Sales* and *Seaboard Finance Corp.* cases, the identity of the garnished employee and the actual debtor were one and the same.[20] However, the Plaintiff in the instant case has alleged: (1) that she was not named as a judgment debtor; and (2) that she suffered pecuniary

---

[19]     *Id.* at 967.

[20]     *Sun Sales Co., Inc. v. Hodges*, 237 So. 2d 684 (La. 1970) (employee Hodges indebted to the garnishee); *Seaboard Finance Corp. v. Anderson*, 305 So. 2d 598 (La. Ct. App. 1975) (employee articulated no provable damages).

and emotional distress damages as a result of Wal-Mart's wage deprivation.[21] Furthermore, Plaintiff complains not that the wages were unlawfully held but that they were unlawfully remitted to Axelrod.[22] The difficulty and the damage suffered by Cowart was caused by the fact that Wal-Mart had to ask Axelrod to have the unlawfully deducted wages returned. Had Wal-Mart simply held the wages, once Plaintiff challenged the garnishment in court, the wages could have been returned immediately.

## III.  PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR CONVERSION

Defendants' entire conversion defense is premised upon its continued insistence that it was acting in accordance with a valid wage citation. However, without a valid citation or the required court order, Wal-Mart converted Plaintiff's wages.[23] As Plaintiff's wages were already earned, but segregated, withheld, and paid out in a sum certain to Axelrod by Wal-Mart, Wal-Mart deprived Plaintiff of her unconditional right to the immediate possession of that property.[24] Plaintiff states a claim for conversion in Count VI of her amended complaint because under Illinois law, "[c]onversion is 'any authorized act, which deprives a man of his property permanently or for an indefinite time.' "[25] Here, Plaintiff properly alleges:

> 1) an unauthorized and wrongful assumption of control, dominion, or ownership by a defendant over plaintiff's personalty; 2) plaintiff's right in the property; 3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and 4) a demand for possession of the property.[26]

---

[21]  *See, e.g.*, First Am. Compl. at ¶ 86.

[22]  *See, e.g.*, First Am. Compl. at ¶¶ 82, 84.

[23]  *See* Exhibit B, attached hereto.

[24]  *See Roderick Development Investment Company v. Community Bank of Edgewater*, 282 Ill. App. 3d 1052, 1057 (1st Dist. 1996).

[25]  *Id.* (quoting *In re Thebus*, 108 Ill. 2d 255, 259 (1985)) (citation omitted).

[26]  *Stauffer v. Westmoreland Obstetric and Gynological Associates, S.C.*, No. 00-C1242, 2001 U.S. Dist. LEXIS 6987, at *9 (N.D. Ill. May 25, 2001) (quoting *Colonial Funding, L.L.C. v. American Empire Surplus Lines Insurance Co.*, 308 Ill. App. 3d 376, 378)).

Because Wal-Mart can be liable for taking Plaintiff's wages, which Plaintiff had an unconditional right to, and because money can be the subject of a conversion action, Wal-Mart's motion to dismiss Count VI fails.

## A.  Defendants can be liable for conversion as garnishees

Wal-Mart erroneously claims that it was acting pursuant to a valid Citation to avoid liability for conversion.  However, Wal-Mart remitted Pamela G. Cowart's wages to Axelrod based solely upon a citation to discover assets (and not the required court order) issued for unrelated person Pamela A. Cowart.  Wal-Mart took earned wages from an entirely different employee than the person to whom the Citation was directed.  Under Illinois law, an employer is only legally allowed to garnish an employee's wages in limited circumstances, such as "in response to a valid wage assignment or wage deduction order" or when "required by law."[27]

In this case, because no order was ever entered Wal-Mart had no obligation to withhold and remit Plaintiff's wages.  The requirement of a judicial order makes sense because an employee has to be considered a "judgment debtor," or "person against whom a judgment has been obtained,"[28] for garnishment to be a permitted collection mechanism.

Here, Plaintiff was not a judgment debtor because she did not owe the debt and was not named on the documents Wal-Mart received.  It is "on service of the summons, the interrogatories, the judgment and a wage deduction notice . . . the employer must start deducting a portion of the wages."[29]  Wal-Mart's deductions were invalid as no judgment was ever presented to it that named the Plaintiff.  Wal-Mart took one person's wages when the face of the judgment named a different

---

[27]     See 820 ILL. COMP. STAT. 115/9 (emphasis added).

[28]     735 ILL. COMP. STAT 5/12-801.

[29]     In re Earley, 305 B.R. 837, 841 (N.D. Ill. 2004) (citing 735 ILL. COMP. STAT. 5/12-805(a); 735 ILL. COMP. STAT. 5/12-806; 735 ILL. COMP. STAT. 5/12-808(b)).  (Emphasis added)

person. Wal-Mart had made a note of the discrepancy but had already begun deducting Plaintiff's wages.[30] Thus, because the judgment and the Citation named a person other than Pamela G. Cowart, Wal-Mart cannot evade liability for conversion by simply stating it was entitled to rely upon facially invalid papers.

Tellingly, Wal-Mart's main authority for its argument that garnishees are protected from liability is derived from Texas law, based upon a state court's construction of a Texas statute.[31] In *A.M. Cohen v. Advance Imports, Inc.*,[32] the employer would have been "act[ing] at his peril" by not immediately deducting the wages in response to a <u>valid</u> writ of garnishment because in that case, there was no question as to the identity of the judgment debtor.[33] Moreover, the Texas code provides that if the garnishee fails to deliver on demand, and does not show a good excuse for such failure, "he may be fined for contempt and imprisoned until he makes such delivery."[34] Contrast this with the Illinois provision which simply enters a conditional judgment against the garnishee who fails to appear in the amount to be deducted[35] and may provide contempt sanctions for failing to appear in answer to the Citation. In Illinois, a garnishee may be liable for contempt if it refuses or neglects to deliver property in his or her possession <u>when ordered by the court</u>."[36] In fact, the

---

[30]    Defendants filed their answer to the Citation to Discover Assets on or about October 30, 2002. However, they began garnishing Plaintiff's wages October 19, 2002. Thus, even before questioning the fact that the name of the person on the citation was different than their employee, they illegally began garnishing her wages.

[31]    *See* Defendant's Memorandum in Support of its Motion to Dismiss, at 9-10.

[32]    597 S.W.2d 449 (Tex. App. 5th Dist. 1980).

[33]    *Id*. at 452. ("when, as in this case, a valid writ of garnishment has been served, the garnishee's duty is to hold the goods of the defendant until the writ is quashed or dissolved by an explicit order of the court that issued it or some higher court acting in its stead.")

[34]    *Id*. at 451. (Emphasis added).

[35]    *See* 735 ILCS 5/12-807.

[36]    735 ILCS 5/12-715.

Citation itself provides that no transfer of non-exempt property can be made until further order of court.[37]  In Cowart's case, there was no such order because no court had yet authorized the garnishment.

These provisions are consistent with other aspects of Illinois law, which provide that the first duty of the employer, as enumerated in 735 ILL. COMP. STAT. 5/12-805(a), is to pay an employee his or her exempt wages.  In Plaintiff's case, all of her wages were exempt because she was not listed as the judgment debtor.  Not only did Wal-Mart breach its statutory duty to pay Plaintiff her exempt wages but also, it violated 735 ILL. COMP. STAT. 5/12-808(e) by remitting exempt wages to Axelrod without an order telling it to do so.[38]  Wal-Mart has confused a wage citation summons under 735 ILL. COMP. STAT. 5/12-805 with an order under 735 ILL. COMP. STAT. 5/12-808(e).

Wal-Mart cannot seek protection under a Texas garnishment code, invent a court order that did not exist, or claim that the garnishment summons was valid as to Pamela G. Cowart.  So Wal-Mart's remittance of wages renders it liable in conversion.[39]

## B.    Plaintiff had an unconditional right to her wages

Plaintiff has also stated a claim for conversion because she alleged she had an unconditional right to her earned wages.[40]  Under the Illinois Wage Payment and Collection Act, 820 ILL. COMP. STAT. 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period

---

[37]    *See* Exhibit B to Wal-Mart's Memorandum in Support of Its Motion to Dismiss.

[38]    The duty to pay an employed, imposed on Wal-Mart pursuant to Illinois law, gives rise to a claim of negligence and Plaintiff reserves the right to amend her complaint to add such count.

[39]    Further, Defendants can also be liable under the Wage Payment and Collection Act for wrongful garnishment. *See Nagel v. Gerald Dennen & Co.*, 272 Ill. App. 3d 516, 524 (1st Dist. 1995) (stating the Illinois Wage Payment and Collection Act creates a private cause of action for those that had their rights violated under the Act).  Plaintiff reserves the right to amend her complaint to add a count for Defendants' violations of this Act.

[40]    *See, e.g.,* First Am. Compl. at ¶ 97.

10

shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned." Thus, Cowart was legally entitled to her wages at the end of each pay period. As stated by the Seventh Circuit, "[o]nce an employee has earned wages by having done the work that under his explicit or implicit employment contract entitles him to those wages, <u>he has a vested right to them.</u>"[41]

Under 820 ILL. COMP. STAT. 115/9, "deductions by employers from wages or final compensation are prohibited unless such deductions are . . . (3) in response to a <u>valid</u> wage assignment or wage deduction order . . ."[42] As there was no wage deduction order here – valid or otherwise – ever issued by a court, or even directed at this Plaintiff, Wal-Mart's conduct was unauthorized.

The only document proffered by Wal-Mart to support its argument that it was acting pursuant to a valid Citation is Axelrod's unsigned Citation notice which does not even name Plaintiff. Although Wal-Mart recognized that it had received documents regarding Pamela <u>A.</u> Cowart, it intentionally disregarded the notice and segregated and disbursed Plaintiff's wages to Axelrod. Because Plaintiff's right to her wages were absolute and unconditional after they were earned[43] and because Wal-Mart was legally barred from distributing her wages to Axelrod until further order of court, Wal-Mart committed conversion.

## C.    Plaintiff's wages are a proper subject of a conversion action

Plaintiff may bring a conversion claim for Wal-Mart's illegal transfer of her wages because her wages were specific and identifiable property, transmitted to Axelrod (via checks) in specific and segregated sums. In cases such as this, where money is the property at issue, Plaintiff must

---

[41]    *Harrell v. U.S.*, 13 F.3d 232, 234 (7th Cir. 1993) (emphasis added).

[42]    *See* 820 ILL. COMP. STAT. 115/9(5) & (6) (emphasis added).

[43]    *See* 820 ILL. COMP. STAT. 115/9(4) & (9).

"demonstrate that the money is capable as being described as a specific chattel."[44] Put another way, a conversion claim will stand where the money at issue "was segregated from other funds, received in a lump sum, earmarked, or otherwise readily identifiable."[45] Because Wal-Mart segregated Plaintiff's wages when it wrote a check for a specific sum and sent it to Axelrod, and did so without a court order authorizing the transfer, Cowart's wages were identifiable.

Wal-Mart would like this Court to find that a conversion claim for earned wages is impossible because the property involves money. This is wrong. For instance, in *Roderick v. Community Bank*,[46] the plaintiff was allowed to bring a claim for conversion where the defendant had wrongfully withheld money the plaintiff was entitled to. There, the Illinois Appellate Court found that where Plaintiff was entitled to 5% of a lump sum, he could sue the wrongful withholder of that sum for conversion – even though this money was not in a separate account – because the money was identifiable.[47] Likewise, Plaintiff's garnished wages are readily identifiable as they were a sum certain remitted to Axelrod. Thus, even if Wal-Mart could argue that Plaintiff's wages were not identifiable when first garnished, Plaintiff still prevails because they became identifiable when transferred to Axelrod. It does not help matters that Wal-Mart's conduct is aggravated by the fact that it claims to have acted under authority of a invalid Citation, and not an order, directed to a person other than Plaintiff.

---

[44]     *Fonda v. General Casualty Company of Illinois*, 279 Ill. App. 3d 894 (1st Dist. 1996).

[45]     *Stauffer v. Westmoreland Obstetric and Gynecologic Associates*, No. 00-C1242, 2001 U.S. Dist LEXIS 6987, *11 (N.D. Ill. May 25, 2001)(emphasis added); *see In re Thebus*, 108 Ill. 2d 255 (money would not be the subject of conversion where the money was not readily identifiable).

[46]     282 Ill. App. 3d 1052 (1st Dist. 1996).

[47]     *Id.* at 1058-59.

The case of *Fonda v. General Casualty Company*[48] also supports Plaintiff's conversion claim because there, a plaintiff was able to state a claim for conversion of money where the Defendant insurer wrongfully paid the owner of the property instead of the loss payee.[49] The Illinois Appellate Court found that the plaintiff, as a secured creditor, had an automatic right to the insurance proceeds and thus stated a claim for conversion.[50] Here, Cowart has a vested property right in her wages under 820 ILL. COMP. STAT. 115/4, which Wal-Mart converted to its own use. As a result, Plaintiff too can properly state a claim for conversion.

Contrary to Wal-Mart's allegations, Pamela G. Cowart's wages do not represent a general debt or obligation because they had already been earned, segregated, and turned over without a court order. Rather, "'the money claimed, or its equivalent, at all times belonged to plaintiff and . . . the defendant converted it to [their] own use.'"[51] Under Illinois law, Defendants were statutorily required to present Plaintiff with her wages. Obviously, a present statutory requirement cannot be characterized as a general debt or obligation. And even if this money was not specifically earmarked for Plaintiff when it was originally garnished, it is of no import here because "it is not necessary for purposes of identification that money be specifically earmarked."[52] Plaintiff's money became readily identifiable when it was specifically accounted for, taken out of her paycheck, and transferred to Axelrod. Money that had been designated as hers was wrongfully given to another. Because Plaintiff has claimed that this money belonged to her at all times and that Wal-Mart

---

[48]     279 Ill. App. 3d 894 (1st Dist. 1996).

[49]     *Id.* at 905.

[50]     *Id.* at 900.

[51]     *Id.* at 901 (*citing General Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 889 (1st Dist. 1990)).

[52]     *Id.* at 902 (*citing Thebus*, 108 Ill. 2d at 260).

improperly and illegally withheld it, Defendants' attempted characterization of it as a general debt does not apply.[53]

The case attached to Wal-Mart's memorandum, *Temmen v. Kent-Brown Chevrolet Company*[54] is inapplicable on multiple grounds. Not only is this case from another state and therefore not binding on this court, but the facts are also dissimilar. In that case, the employer garnishing the wages was also the creditor to whom that plaintiff's debt was owed.[55] Therefore, that case involved a direct debtor-creditor relationship and a dispute as to what money, if any, was owed and to whom. In *Temmen*, unlike in the instant case, no specific funds had been paid out to a third party so there could be no claim for the return of that specific fund.

The other out-of-state cases relied on by Defendant are similarly inapplicable. For example, in *Claytor v. Computer Associates International*,[56] the Kansas court refused to find conversion where there was a dispute regarding the amount of commissions owed.[57] In the Plaintiff's case, there is no dispute as to how much Cowart was entitled to or how much she had earned and Illinois law gives her the right to them. The dispute was over Wal-Mart's remittance of a specific amount of money to Axelrod and its failure to immediately return it upon Cowart's demand. In fact, in the

---

[53]    In yet another Illinois case, the court in *Addante v. Pompilio*, 303 Ill. App. 172 (1st Dist. 1940), allowed an action for conversion where the defendant wrongfully retained money that the plaintiff had given him to send to his brother in Italy.

[54]    227 Kan. 45 (1980).

[55]    Ironically, though that court did not find a conversion claim, they did rule that the employer-garnishee could be held liable for wrongfully garnishing the plaintiff's wages under a Kansas statute similar to those found in the Illinois Wage Payment and Collection Act.

[56]    262 F. Supp. 2d 1188 (D. Kan. 2003).

[57]    A similar situation also confronted the court in *Woodward, Inc. v. WCSC*, 88 A.D.2d 883 (Sup. NY 1982). The commissions which were the subject of the conversion action should have been sought in a breach of contract context because the plaintiff and defendant had entered into a contract for payment of commissions. *Woodward, Inc.*, 88 A.D.2d at 883.

similarly inapplicable Texas decision, *Jackson v. DaimlerChrysler Corp.*,[58] the wages were paid to the complainant – there was simply a delay in payment caused by an administrative problem. Here, Wal-Mart cannot hide behind any sort of administrative defense as it blatantly disregarded the language of Citation itself (which prohibited Wal-Mart from "paying over or otherwise disposing" of non-exempt money ... "until further order of court").

Because Cowart completed the work which entitled her to be paid, she possessed an unconditional right to payment of her wages. Wal-Mart's remittance of exempt wages to Axelrod, when such wages were not subject to any judgment or court order, transformed the wages into a specific and identifiable sum. Plaintiff may thus maintain an action in conversion.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Wal-Mart's motion to dismiss Counts V and VI in its entirety.

Respectfully submitted,

By: _____
One of Plaintiffs' Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 1805
Chicago, Illinois 60602
(312) 782-5808

---

[58]     No. 3:03-CV-0614-P, 2004 WL 690840 (N.D. Tex. March 30, 2004).

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

| | | |
|---|---|---|
| Pamela G. Cowart, individually<br>and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 03 C 5341 |
| v. | ) ) | |
| David J. Axelrod & Associates, a/k/a<br>Axelrod & Greenblatt, David J. Axelrod,<br>Individually, Wal-Mart Stores, Inc., and<br>Sam's Club West, Inc., d/b/a Sam's Club, | ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) ) | |

## DEFENDANT'S SUPPLEMENTAL OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Defendant David J. Axelrod & Associates and David J. Axelrod, incorrectly sued as David J. Axelrod & Associates, a/k/a Axelrod & Greenblatt (collectively, "Axelrod"), as and for their Supplemental Objections and Answers to Plaintiff's First Set of Interrogatories and First Request for the Production of Documents, states as follows:

### GENERAL OBJECTIONS

1. Axelrod objects to these Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, the work-product doctrine or any other common-law or statutory privilege.

2. Axelrod objects to these Interrogatories to the extent that they are overly broad, oppressive, or unduly burdensome.

3. Axelrod objects to these Interrogatories to the extent that they seek information outside of Axelrod's knowledge or control.

4.      Axelrod objects to these Interrogatories to the extent that they are unlimited in time and/or scope.

5.      Axelrod objects to these Interrogatories to the extent that they seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Axelrod also objects to the plaintiff's discovery requests to the extent that the requests seek information from David J. Axelrod & Associates a/k/a Axelrod & Greenblatt. David J. Axelrod & Associates is not "also known as" Axelrod & Greenblatt. Further, the garnishment proceeding at issue in this case (00 LM 1512) was initiated by Axelrod & Greenblatt, not by David J. Axelrod & Associates. As such, the defendants are not properly identified in this action.

## SPECIFIC ANSWERS AND OBJECTIONS

Subject to and without waiving any of the foregoing General Objections, Axelrod provides the following answers. Axelrod further states that its investigation continues and that it reserves the right to and will duly supplement its responses as permitted by the Federal Rules of Civil Procedure.

### Interrogatory No. 1 -Respondent

Identify the person(s) responding to these requests, each person consulted in preparing the responses, the interrogatory answer(s) about which they were consulted, and identify each document consulted or referred to by that person by Bates stamp number.

**Answer:**      David J. Axelrod. Documents responsive to the plaintiff's request for production are produced herewith, as well as pursuant to Rule 26(a)(1).

### Interrogatory No. 2 -Persons With Knowledge

Identify the name and last known address and telephone number of each individual with knowledge of any facts that support, contradict or relate to Plaintiff's claims or Axelrod's defenses. For each of the people you identify, state the subject matter of their knowledge and provide a summary of the facts and information they may use.

**Answer:**    David J. Axelrod: David J. Axelrod & Associates, 1448 Old Skokie Road, Highland Park, IL 60035

Penny Vermillion: David J. Axelrod & Associates, 1448 Old Skokie Road, Highland Park, IL 60035

Pamela G. Cowart

Axelrod reserves the right to supplement this response in the event that additional information is obtained and pursuant to any applicable scheduling, discovery or other order of the Court.

## Interrogatory No. 3 -Other FDCPA Actions

Identify by caption, court, civil action number and result all litigation filed against David J. Axelrod & Associates alleging violations of the Fair Debt Collection Practices Act or state law equivalent similar to the instant case.

**Answer:**    Axelrod objects to Interrogatory No. 3 on the grounds that it seeks information that is neither relevant to this action, nor likely to lead to the discovery of admissible evidence. Without waiver of the foregoing objection, our investigation to date has revealed one other FDCPA action against Axelrod. This action was filed in 1998 in the United States District Court for the Northern District of Illinois under Case No. 98 C 815211.

## Interrogatory No. 4 -Net Worth Information

State David J. Axelrod & Associate's net worth and describe in meaningful factual detail how this figure was calculated. The mere assertion that the figure was determined by simply subtracting liabilities from assets is not sufficient. You must specify the assets and liabilities as well as his respective values. This information is specifically required to determine the damages under § 1692(k) of the Fair Debt Collection Practices Act.

**Answer:**    Axelrod objects to Interrogatory No. 4 on the grounds that it is vague and ambiguous with respect to the request for a description of the defendant's ultimate net worth "in meaningful factual detail." Axelrod also objects to Interrogatory No. 4 on the grounds that it attempts to seek financial information beyond "book value" as set forth in *Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000). Answering further and without waiver of the foregoing objections, Axelrod states that its net worth is approximately $20,000. This figure is determined by a comparison of the net assets of Axelrod minus the liabilities of Axelrod. Axelrod reserves the right to supplement this response in the event that additional information is obtained.

**Interrogatory No. 5 - Number of Recipients**

State the number of persons both in Illinois and across the United States who received each of the communications at issue in this litigation in the year prior to the filing of this action.

**Answer:**    Axelrod objects to Interrogatory No. 5 on the grounds that the phrase "communications at issue in this litigation" is vague and ambiguous, particularly since the phrase is defined by the plaintiff as "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)." In light of the numerous different "communications" alleged in the plaintiff's complaint, it is impossible for Axelrod to respond to this interrogatory. Axelrod further objects to the extent that the plaintiff purports to seek discovery regarding "communications" involving other clients or other matters and as such, seeks information that is neither relevant to this action, nor likely to lead to the discovery of admissible evidence.

**Interrogatory No. 6 - Identification of Class Members**

State the name, last known address and telephone number of each person in Illinois who received each of the communications at issue in this litigation in the year prior to the filing of this action.

**Answer:**    Axelrod objects to Interrogatory No. 6 on the grounds that the phrase "communications at issue in this litigation," is vague and ambiguous, particularly since the phrase is defined by the plaintiff as "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)." In light of the numerous different "communications" alleged in the plaintiff's complaint, it is impossible for Axelrod to respond to this interrogatory. Axelrod further objects to the extent that the plaintiff purports to seek discovery regarding "communications" involving other clients or other matters and as such, seeks information that is neither relevant to this action, nor likely to lead to the discovery of admissible evidence.

**Interrogatory No. 7 - Requests for Admission**

If your response to any of the Requests for Admission is anything other than an unqualified admission, identify each person and/or document that you may use to support your denial of that request.

**Answer:**    Axelrod objects to Interrogatory No. 7 on the grounds that it is overly burdensome and vague. The plaintiff has set forth 108 requests to admit to Axelrod. Virtually all of the responses contain something other than an "unqualified admission," either because the request is untrue, or requires an explanation. Requesting the identity of each person and/or document which supports the denial for every such request for admissions is thus overly burdensome. With respect to any response to any request for admission that is not an "unqualified admission," and to the extent that an explanation or objection is not set forth in response to the request for admission itself, Axelrod refers to the documents produced herewith in

4

response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1).

## Interrogatory No. 8 -Expert Witnesses

Identify each person whom David J. Axelrod & Associates expects to call as an expert witness at trial, state the subject matter on which the expert is expected to testify and the substance of the facts and opinions to which the expert is expected to testify, and provide a summary of the grounds for each opinion and the expert's qualifications.

**Answer:**    Axelrod has not yet determined who he intends to call as an expert witness at the time of trial and reserves the right to supplement this response in the event that additional information is obtained, as well as to identify any expert or other witness pursuant to any applicable scheduling, discovery or other order of the Court.

## Interrogatory No. 9 -Other Witnesses

State the name, address, telephone number, job title and employer of each person whom David J., Axelrod & Associates expects to call to testify at trial about factual matters.

**Answer:**    David J. Axelrod: David J. Axelrod & Associates, 1448 Old Skokie Road, Highland Park, IL 60035

Penny Vermillion: David J. Axelrod & Associates, 1448 Old Skokie Road, Highland Park, IL 60035

Pamela G. Cowart

Unidentified representatives of Wal-Mart Stores, Inc. and Sam's Club

Unidentified representatives of K-Mart

Axelrod reserves the right to supplement this response in the event that additional information is obtained and pursuant to any applicable scheduling, discovery or other order of the Court.

## Interrogatory No. 10 -Class Certification

Please state, in meaningful detail, all factual bases for your denial that this case should be certified as a class action. In so doing, identify individuals with knowledge of those facts and summarize the nature and extent of their knowledge. If you currently have no facts to support the contention that this case should not be certified as a class action, state "none." We are not asking for your legal conclusions.

**Answer:**    Axelrod objects to Interrogatory No. 10 on the grounds that it is overly broad, unduly burdensome and purports to seek information that is protected by the

attorney work-product. Answering further and without waiver of the foregoing objections, Axelrod states as follows:

Axelrod denies that this case should be certified as a class action based on, but not limited to, the following grounds: As a threshold matter, there is no indication that the class is so numerous that joinder is impracticable. The purported class consists of consumers whose employers were contacted by Axelrod to collect an outstanding debt. There is no indication that there exists sufficient persons with similar claims. In fact, the plaintiff's claim here is nothing more than that Axelrod issued a Citation Notice regarding the correct judgment-debtor upon a valid judgment against such judgment-debtor to the judgment-debtor's employer at Wal-mart and that Wal-Mart then erroneously applied the Citation Notice to the plaintiff. Additionally, there is no indication that questions of law and fact are common to every purported member of the class in light of the unique factual bases for the individual plaintiff's allegations against Axelrod, as well as the damages alleged by the individual plaintiff. That is, the plaintiff's claim against Axelrod is based on the unique circumstance where a valid and proper Citation Notice regarding a particular judgment-debtor was misapplied by an employer to a different employee with a similar name. No similar claims are known to exist. The claims of the individual plaintiff are thus not representative of the claims of the purported members of the class and as a result, there is no indication that the individual plaintiff can adequately protect the claims of any other purported class member. For the same reasons, there is no basis for the conclusion that the prosecution by other members of the purported class of any action against Axelrod would create the risk of inconsistent judgments. Moreover, the alleged claims against Axelrod and damages resulting from such claims asserted by any member of the purported class would necessarily turn on the particular facts and circumstances of his or her individual assertions and as such, there is no common question of fact such that a class action would adequately represent, or would be superior to an individual action.

## Interrogatory No. 11 - Affirmative Defenses

Please state, in meaningful factual detail, the basis for your affirmative defenses. In so doing, identify all documents that support, contradict or relate to each affirmative defense, identify individuals with knowledge of those facts, and summarize the nature and extent of their knowledge.

**Answer:**     Axelrod objects to Interrogatory No. 11 on the grounds that it is overly broad, unduly burdensome and purports to seek information that is protected by the attorney work-product doctrine. Answering further and without waiver of the foregoing objections, Axelrod sates as follows:

Axelrod may not be held liable in this action because the alleged violations were not intentional and otherwise resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such errors.

6

Axelrod obtained a valid judgment on behalf of his client against an individual named Pamela A. Cowart. He issued a Citation Notice upon K-Mart regarding Pamela A. Cowart and was advised by K-Mart that the judgment-debtor no longer worked at K-Mart. K-Mart provided Axelrod with the judgment-debtor's social security number. Axelrod thereafter served a Citation Notice regarding Pamela A. Cowart (with the social security number provided by K-Mart) on Wal-Mart. Wal-Mart responded that it had an employee with the same name and social security number, but who was using the middle initial "G." Wal-Mart further indicated that it used the social security number as the basis upon which to confirm that its employee was the judgment-debtor. Immediately upon receiving various assertions from the plaintiff and her counsel that the plaintiff was not the judgment debtor, Axelrod ceased distributing any of the wages turned over to him from Wal-Mart in order to find out whether or not the plaintiff was, in fact, the judgment-debtor. Upon confirming that the plaintiff was not the judgment-debtor, Axelrod immediately returned the garnished wages to the plaintiff.

Any communication by or to Axelrod by or to the plaintiff or to the plaintiff's employer was reasonably necessary to effectuate a post judgment judicial remedy and was otherwise consistent with established procedures of the Illinois Code of Civil Procedure and/or the rules of the Circuit Court.

## Interrogatory No. 12 -Investigation Conducted by Defendant

Describe, step-by-step, the process taken to investigate Plaintiff's account, including, without limitation, the steps taken to review and investigate the basis of the debt. In so doing, identify: (a) all individuals and entities who were involved in performing the review/investigation; (b) all individuals and entities contacted during the course of the review/investigation; (c) all documents produced to Axelrod during the course of the review/investigation; and (d) all documents maintained by Axelrod and/or produced to Axelrod concerning the review/investigation.

**Answer:** Axelrod objects to Interrogatory No. 12 on the grounds that it is overly broad, unduly burdensome and purports to seek information that is protected by the attorney work-product doctrine. Axelrod also objects to Interrogatory No. 12 on the grounds that there is no dispute in this case that there was a valid debt owed to the judgment-creditor. Rather, the issue in this action arises from the alleged misidentification of the judgment-debtor for garnishment purposes by the plaintiff's employer, Wal-Mart. Accordingly, Interrogatory No. 12 purports to seek information that is neither relevant to this action, nor likely to lead to the discovery of relevant and/or admissible evidence. See documents A-1 to A-177 produced in response to Plaintiff's First Request for the Production of Documents.

## Interrogatory No. 13 -Depositions

Identify any deposition of any Axelrod personnel taken in the last 5 years in conjunction with a Fair Debt Collection Practices Act lawsuit against Axelrod or any of its employees. By identify, we mean that you can provide us with the court caption and the name of the deponent and the name, address and phone number of the attorney who took the deposition.

**Answer:** Axelrod objects to Interrogatory No. 13 on the grounds that it seeks information that is irrelevant, not admissible, or is not likely to lead to the discovery of information that is relevant and/or admissible in this action. Answering further and without waiver of the foregoing objections, Axelrod answers that there have been no depositions of any Axelrod personnel taken in the last 5 years in connection with a Fair Debt Collection Practices Act lawsuit against Axelrod or any of its employees.

## Interrogatory No. 14 -Evidence

Identify all documents and persons who have any evidence that Pamela G. Cowart, the Plaintiff in this action owes any money to Dolly Vole.

**Answer:** Documents responsive to Interrogatory No. 14 are being produced herewith in response to the plaintiff's request for the production of documents, as well as pursuant to Rule 26(a)(1). Those documents include, but are not limited to, the responses filed by Wal-Mart to the Citation Notice.

## Interrogatory No. 15 -Investigation

Identify in a step by step fashion how and why Defendant formed the belief that it should bring a wage citation against Pamela G. Cowart, in so doing, state the dates for such a determination, who personally made the determination and identify the documents or evidence that formed the belief.

**Answer:** Axelrod objects to Interrogatory No. 15 on the grounds that it assumes facts that are not true. Specifically, the citation referenced in the plaintiff's complaint and attached thereto identified Pamela A. Cowart, not Pamela G. Cowart. Accordingly, Axelrod never brought a wage citation against Pamela G. Cowart and, thus, Interrogatory No. 15 purports to seek information that is neither relevant to this action, nor likely to lead to the discovery of relevant and/or admissible evidence.

## Interrogatory No. 16 -Communication with Plaintiff's Employer

Identify all correspondence or communications that were initiated by your office to Wal-Mart Stores, Inc. and Sam's West, Inc. d/b/a Sam's Club. In so identifying, make clear who made the communication, to who the communication was made, as well as the date and time, and the manner of communication.

**Answer:** Axelrod objects to Interrogatory No. 16 on the grounds that the term "communications," as defined by the plaintiff as "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)," is vague and ambiguous in light of the numerous alleged "communications" referenced in the plaintiff's complaint. Axelrod also objects on the grounds that Interrogatory No. 16 purports to seek discovery regarding "communications" involving other clients or other matters and as such, seeks information that is neither relevant to this action, nor likely to lead to the discovery of relevant and/or admissible evidence. Without

waiving the foregoing objection, the only contacts initiated by Axelrod to Wal-Mart that are presently recalled were the Citation Notice attached to the plaintiff's complaint and a phone call to Wal-Mart to advise them to cease the garnishment against the plaintiff. See document A-17 produced in response to Plaintiff's First Request for the Production of Documents. Axelrod reserves the right to supplement this response as further information becomes available.

## Interrogatory No. 17 -Credit Access

Did you or any of your agents access Plaintiff's personal credit information, and if so please state the permissible purpose for accessing Plaintiff's personal credit information.

**Answer:**  Upon reasonable investigation, Axelrod states that it did not access the plaintiff's personal credit information.

## Interrogatory No. 18 -Credit Access

Please identify who reviewed the "Answers of Garnishee" provided to you on or about November 22, 2002 from Wal-Mart.

**Answer:**  David J. Axelrod.

## Interrogatory No. 19 -Distribution of Funds

Please specify what date the funds obtained from the Plaintiff were distributed to Defendant's client.

**Answer:**  Certain funds were distributed to Axelrod's client on or about November 15, 2002 and December 13, 2002.

## GENERAL OBJECTIONS

1.     Axelrod objects to these Requests for Production to the extent that they seek information protected from disclosure by the attorney-client privilege, the work-product doctrine or any other common-law or statutory privilege.

2.     Axelrod objects to these Requests for Production to the extent that they are overly broad, oppressive, or unduly burdensome.

3.     Axelrod objects to these Requests for Production to the extent that they seek information outside of Axelrod's knowledge or control.

4.     Axelrod objects to these Requests for Production to the extent that they are unlimited in time and/or scope.

5.     Axelrod objects to these Requests for Production to the extent that they seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

6.     Axelrod also objects to the plaintiff's discovery requests to the extent that the requests seek information from David J. Axelrod & Associates a/k/a Axelrod & Greenblatt. David J. Axelrod & Associates is not "also known as" Axelrod & Greenblatt. Further, the garnishment proceeding at issue in this case (00 LM 1512) was initiated by Axelrod & Greenblatt, not by David J. Axelrod & Associates. As such, the defendants are not properly identified in this action.

## SPECIFIC ANSWERS AND OBJECTIONS TO PLAINTIFF'S
## REQUEST FOR PRODUCTION

Subject to and without waiving any of the foregoing General Objections, Axelrod provides the following answers. Axelrod further states that its investigation continues and that it

reserves the right and will duly supplement its responses as permitted by the Federal Rules of

Civil Procedure.

1. All exhibits David J. Axelrod & Associates intend to introduce at trial.

**Response:** Axelrod has not yet determined which documents he intends to introduce at trial. Axelrod reserves the right to supplement this response, as well as to identify any documents that Axelrod intends to introduce at trial pursuant to any applicable scheduling and/or discovery order.

2. Produce the turn over order that authorized David J. Axelrod & Associates to take possession of the wages withheld from Pamela G. Cowart.

**Response:** Upon reasonable investigation, no such responsive document has been located.

3. Produce the Court order in case 00 LM 1512 that authorized David J. Axelrod & Associates to take possession of the wages withheld from Pamela G. Cowart.

**Response:** Upon reasonable investigation, no such responsive document has been located.

4. Produce the document that you obtained from Wal-Mart that contained Pamela G. Cowart's Social Security Number.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1).

5. Provide the notice prior to wage withholdings sent to Pamela G. Cowart before you contacted her employer.

**Response:** Upon reasonable investigation, no such responsive document has been located.

6. Provide the "Answers of Garnishee" provided to you on or about November 22, 2002 from Wal-Mart.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). See document A-37 produced in response to Plaintiff's First Request for the Production of Documents.

7. Provide the transaction history or copies of the checks showing the distribution of the funds obtained from Plaintiff's employer to Defendant's client.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1).

8.  Provide all correspondence to you that would have put you on notice that you were garnishing the wrong person.

**Response:** Axelrod objects to this request on the grounds that the phrase "put you on notice" is vague and ambiguous. Answering further and without waiver of the foregoing objections, documents which contain assertions that the wrong person's wages were being garnished by Wal-Mart are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1).

9.  Produce all documents that evidence in any way that Pamela G. Cowart, the Plaintiff in this action, owed any money to David J. Axelrod's client's Dolly Vole.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Those documents include, but are not limited to, the responses filed by Wal-Mart to the Citation Notice.

10. Produce all documents that led David J. Axelrod & Associates to the belief that Pamela G. Cowart, the Plaintiff in this action, owed any money to David J. Axelrod's client's Dolly Vole.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Those documents include, but are not limited to, the responses filed by Wal-Mart to the Citation Notice.

11. Produce all documents that evidence in any way that Pamela G. Cowart, the Plaintiff in this action, owed any money to Dolly Vole.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Those documents include, but are not limited to, the responses filed by Wal-Mart to the Citation Notice.

12. Produce all documents that Axelrod had in his possession in 2002 that evidence in any way that Pamela G. Cowart, the Plaintiff in this action, owed any money to Dolly Vole.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Those documents include, but are not limited to, the responses filed by Wal-Mart to the Citation Notice.

13. Produce all correspondence or communications that were initiated by your office to Wal-Mart Stores, Inc. and Sam's West, Inc. d/b/a Sam's Club.

**Response:** Axelrod objects to Request No. 13 on the grounds that the term "communications," as defined by the plaintiff as "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)," is vague and ambiguous in light of the numerous alleged "communications" referenced in the plaintiff's complaint. Axelrod further objects to the extent that the plaintiff purports to seek discovery regarding "communications" involving other clients or other matters and as such, seeks information that is neither relevant to this action, nor likely to

lead to the discovery of relevant and/or admissible evidence. Answering further and without waiver of the foregoing objections, responsive documents relating to Pamela Cowart are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). See document A-17 produced in response to Plaintiff's First Request for the Production of Documents.

14. All deposition transcripts of any Axelrod personnel regarding any Fair Debt Collection Practices Act action brought against them in the last 5 years.

**Response:** Axelrod objects to this request on the grounds that it calls for the production of information that is neither relevant to the individual plaintiff's claims in this action, nor is it likely to result in the discovery of relevant and/or admissible evidence. Answering further and without waiver of the foregoing objections, Axelrod states that upon reasonable investigation, no such responsive document(s) has been located. Axelrod reserves the right to supplement this response in the event that additional information is obtained.

15. Copies of all settlement papers regarding any Fair Debt Collection Practices Act case against Axelrod or its employees in the last 5 years.

**Response:** Axelrod objects to this request on the grounds that it calls for the production of information that is neither relevant to the individual plaintiff's claims in this action, nor is it likely to result in the discovery of relevant and/or admissible evidence. Axelrod also objects on the grounds that the request calls for the production of information that is privileged and/or confidential. Answering further and without waiver of the foregoing objections, our investigation to date has revealed one other FDCPA action against Axelrod. This action was filed in 1998 in the United States District Court for the Northern District of Illinois under Case No. 98 C 815211. Axelrod reserves the right to supplement this response in the event that additional information, including a settlement agreement in Case No. 98 C 815211, is obtained.

16. Copies of all filed complaints regarding any Fair Debt Collection Practices Act case against Axelrod or its employees in the last 5 years.

**Response:** Axelrod objects to this request on the grounds that it calls for the production of information that is neither relevant to the individual plaintiff's claims in this action, nor is it likely to result in the discovery of relevant and/or admissible evidence. Answering further and without waiver of the foregoing objections, our investigation to date has revealed one other FDCPA action against Axelrod. This action was filed in 1998 in the United States District Court for the Northern District of Illinois under Case No. 98 C 815211. Axelrod reserves the right to supplement this response in the event that additional information, including a settlement agreement or complaint in Case No. 98 C 815211, is obtained.

17. Produce Axelrod's policies and procedure manuals used to maintain compliance with the Fair Debt Collection Practices Act.

**Response:** Upon reasonable investigation, no such responsive document has been located. Axelrod reserves the right to supplement this response in the event that additional information is obtained.

18. Produce all documents that support your contention that this was a bona fide error.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Axelrod reserves the right to supplement this response in the event that additional information is obtained.

19. Produce all documents that evidence your procedures you had in place that were reasonably adapted to avoid the error in this case.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Axelrod reserves the right to supplement this response in the event that additional information is obtained.

20. Produce all documents disclosed in your 26a disclosures.

**Response:** Documents are produced herewith pursuant to Rule 26(a)(1).

21. Produce any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment, which may be entered in the action, or to indemnify or reimburse for payments made to satisfy the judgment.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). See documents A-158 to A-177 produced in response to Plaintiff's First Request for the Production of Documents.

22. Produce all documents in your possession or control that support, contradict, or relate to the factual basis of your denial of any of the allegations of the Complaint.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Axelrod reserves the right to supplement this response in the event that additional information is obtained. See documents A-1 to A-177 produced in response to Plaintiff's First Request for the Production of Documents.

23. Produce all documents in your possession or control that support, contradict, or relate to the factual basis of your affirmative defenses.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Axelrod reserves the right to supplement this response in the event that additional information is obtained. See documents A-1 to A-177 produced in response to Plaintiff's First Request for the Production of Documents.

24. All financial reports of David J. Axelrod for the past three years. The term financial reports includes, by way of illustration and not limitation, cash-flow statements, income statements, balance sheets, listings of accounts receivable, firm valuation reports, etc.

**Response:** Axelrod objects to this request on the grounds that it attempts to seek financial information regarding David J. Axelrod beyond his present "book value" as set forth in *Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000) by requesting "financial reports," including, as provided in Request 24, "cash-flow statements, income statements, balance sheets, listings of accounts receivable, firm valuation reports" and other unidentified items. Answering further and without waiver of the foregoing objections, Axelrod states that its net worth is approximately $20,000. This figure represents an approximation of Axelrod's "book value" under *Sanders* and is determined by a comparison of the net assets of Axelrod minus the liabilities of Axelrod. Responsive documents in conformance with *Sanders* are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Axelrod reserves the right to supplement this response in the event that additional information is obtained.

25. All financial reports of David J. Axelrod & Associates for the past three years. The term financial reports includes, by way of illustration and not limitation, cash-flow statements, income statements, balance sheets, listings of accounts receivable, firm valuation reports, etc.

**Response:** Axelrod objects to this request on the grounds that it attempts to seek financial information regarding David J. Axelrod & Associates beyond its present "book value" as set forth in *Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000) by requesting "financial reports," including, as provided in Request 24, "cash-flow statements, income statements, balance sheets, listings of accounts receivable, firm valuation reports" and other unidentified items. Answering further and without waiver of the foregoing objections, Axelrod states that its net worth is approximately $20,000. This figure represents an approximation of Axelrod's "book value" under *Sanders* and is determined by a comparison of the net assets of Axelrod minus the liabilities of Axelrod. Responsive documents in conformance with *Sanders* are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Axelrod reserves the right to supplement this response in the event that additional information is obtained.

26. All income tax returns of David J. Axelrod & Associates for the past three years.

**Response:** Axelrod objects to this request on the grounds that it attempts to seek financial information regarding David J. Axelrod & Associates beyond its present "book value" as set forth in *Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000) by requesting the tax returns of David J. Axelrod & Associates for the past three years, none of which have any bearing on "book value." Answering further and without waiver of the foregoing objections, Axelrod states that its net worth is approximately $20,000. This figure represents an approximation of Axelrod's

"book value" under *Sanders* and is determined by a comparison of the net assets of Axelrod minus the liabilities of Axelrod. Responsive documents in conformance with *Sanders* are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Axelrod reserves the right to supplement this response in the event that additional information is obtained.

27. All income tax returns of David J. Axelrod for the past three years.

**Response:** Axelrod objects to this request on the grounds that it attempts to seek financial information regarding David J. Axelrod beyond his present "book value" as set forth in *Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000) by requesting the tax returns of David J. Axelrod for the past three years, none of which have any bearing on "book value." Answering further and without waiver of the foregoing objections, Axelrod states that its net worth is approximately $20,000. This figure represents an approximation of Axelrod's "book value" under *Sanders* and is determined by a comparison of the net assets of Axelrod minus the liabilities of Axelrod. Responsive documents in conformance with *Sanders* are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). Axelrod reserves the right to supplement this response in the event that additional information is obtained.

28. All internal reports, memoranda, etc. of David J. Axelrod & Associates regarding the use of its collection notices and collection efforts.

**Response:** Upon reasonable investigation, no such responsive document(s) has been located. Axelrod reserves the right to supplement this response in the event that additional information is obtained.

29. All operations manuals, training manuals, etc., utilized by David J. Axelrod & Associates and its staff in the collection of debts or preparing debt collection letters.

**Response:** Upon reasonable investigation, no such responsive document(s) has been located. Axelrod reserves the right to supplement this response in the event that additional information is obtained.

30. All documents relating to the maintenance of procedures by David J. Axelrod & Associates adopted to avoid any violations of the Fair Debt Collection Practices Act.

**Response:** Upon reasonable investigation, no such responsive document(s) has been located. Axelrod reserves the right to supplement this response in the event that additional information is obtained.

31. Copies of all reports and documents utilized by any expert that David J. Axelrod & Associates might call at trial.

**Response:** Axelrod has not yet determined who he intends to call as an expert witness at the time of trial and as such, no copy of any report(s) and/or document(s) utilized by

any expert that Axelrod might call at trial is produced at this time. Axelrod reserves the right to supplement this response in the event that additional information is obtained, as well as to identify any expert or other witness pursuant to any applicable scheduling, discovery or other order of the Court.

32. Copies of any complaints filed against David J. Axelrod & Associates alleging violations of the Fair Debt Collection Practices Act. This information is specifically identified as relevant to the determination of damages in the FDCPA Section 1692k(b)(2).

**Response:** Axelrod objects to this request on the grounds that it calls for the production of information that is neither relevant to the individual plaintiff's claims in this action, nor is it likely to result in the discovery of relevant and/or admissible evidence. Axelrod further states that Section 1692k(b)(2) does not permit discovery into alleged violations of the FDCPA which are unrelated to the claims of the individual plaintiff in this action. Answering further and without waiver of the foregoing objections, our investigation to date has revealed one other FDCPA action against Axelrod. This action was filed in 1998 in the United States District Court for the Northern District of Illinois under Case No. 98 C 815211. Axelrod reserves the right to supplement this response in the event that additional information, including a settlement agreement or complaint in Case No. 98 C 815211, is obtained.

33. Copies of any insurance policies or indemnification agreements regarding David J. Axelrod & Associates and its debt collection activities and letter writing agreements and/or its violations of the Fair Debt Collection Practices Act.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1). See documents A-158 to A-177 produced in response to Plaintiff's First Request for the Production of Documents.

34. All documents that refer or relate to Plaintiff, including all documents stored, indexed, or retrievable, under her name, or some number, symbol or code assigned to her (such as file number, case number) including, without limitation, computer records, notes, correspondence and internal memorandum.

**Response:** Responsive documents are produced herewith in response to the plaintiff's request for production, as well as pursuant to Rule 26(a)(1).

35. Copies of all depositions taken of David J. Axelrod & Associates personnel in connection with FDCPA actions brought against Defendant in the past five years.

**Response:** Axelrod objects to this request on the grounds that it calls for the production of information that is neither relevant to the individual plaintiff's claims in this action, nor is it likely to result in the discovery of relevant and/or admissible evidence. Answering further and without waiver of the foregoing objections, upon reasonable investigation, no such responsive document(s) has been located.

36. If David J. Axelrod & Associates personnel pulled Plaintiff's credit report, a copy of the report.

Response: Upon reasonable investigation, no such responsive document has been located.

37. If David J. Axelrod & Associates personnel pulled Plaintiff's credit report, a copy of the agreement with the credit reporting agency authorizing the access.

Response: Upon reasonable investigation, no such responsive document has been located.

Dated May 25, 2004

Respectfully submitted,

David J. Axelrod & Associates and David J. Axelrod, incorrectly sued as David J. Axelrod & Associates f/k/a Axelrod & Greenblatt and David J. Axelrod

By: _____
One of Their Attorneys

Terry D. Weissman (#6211582)
Christopher D. Mickus (#6270275)
NEAL GERBER & EISENBERG LLP
Two North LaSalle Street,
Suite 2200
Chicago, Illinois 60602
312/269-8000

NGEDOCS :015544.0657 979437.2

# CERTIFICATE OF SERVICE

I, Christopher D. Mickus, an attorney, certify that I caused a copy of **Defendant's Supplemental Objections And Answers To Plaintiff's First Set Of Interrogatories And First Request For The Production Of Documents**, to be served upon the following counsel of record:

Lance A. Raphael
The Consumer Advocacy Center, P.C.
180 West Washington Street, Suite 700
Chicago, IL 60602-2318
Phone: 312 782-5808
Fax: 312 377-9930

Ruth A. Bahe-Jachna
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 2500
Chicago, IL 60601
Phone: 312 456-8400
Fax: 312 456-8435

by facsimile and by depositing a copy of same in the United States Mail Chute from the law offices of Neal, Gerber & Eisenberg LLP located at Two North LaSalle Street, Suite 2300, Chicago, Illinois 60602 with proper postage prepaid on this 25th day of **May, 2004**.

Christopher D. Mickus

NGEDOCS :015544.0657 1037202.1

# EXHIBIT B

P. 05

AR-03-2003 05:38 AM     FAX NO.      P. 06

FRONT DESK LOC E      479 750 5481   P.04/04

PAY TO
THE ORDER OF DOLLY VOLE     DATE 11-08-2002

ONE HUNDRED EIGHT DOLLARS EIGHTY-NINE CENTS
855234072

DOLLY VOLE
4444 OLD SKOKIE ROAD
HIGHLAND PARK      IL 60035

Senior Vice President, Finance and Treasurer

CHK# 855234072   ACT# 19341857   AMT 108.89   D1 11-20-2002   NBC# 855234010   App 3

11/18/02

0556825487     A221642494

1ST BANK
HIGHLAND PARK IL 60035

FOR DEPOSIT ONLY
FIRST BANK OF HIGHLAND PARK

FEB-07-2003  13:05     FRONT DESK LOC E          479 758 5481   P.03/04

702 S.W. 8TH ST. BENTONVILLE ARKANSAS 72716

PAY TO
THE ORDER OF DOLLY VOLE

DATE 11-22-2002

$ **102.30**

ONE HUNDRED TWO DOLLARS THIRTY CENTS

CHECK NUMBER

086001808

S1 02          A          135688836Z
DOLLY VOLE
1408 OLD SKOKIE ROAD
HIGHLAND PARK          IL  60035

Senior Vice President, Finance and Treasurer

CHK# 86001808   ACT# 19341857   AMT 102.30   DT 12-18-2002   SEC# #193198600   ApID 3

1ST BANK HIGHLAND PRK >071922609<
HIGHLAND PRK IL 60035
54854 CHG-102.30 0001934562 01
54854 FD00-102.30 0001934562 01
78001640B 12-17-02
78001640B 4818 4816 01 76 125

FOR DEPOSIT ONLY
FIRST BANK OF HIGHLAND PARK
DAVID L. MCCROOM & ASSOCIATES

0711005
12/11/02
0223409883

0222175114

T/C 0   CAP/Run ws/0064/00

WAL ★ MART BENTONVILLE, ARKANSAS
708 S W. 8th St. BENTONVILLE, ARKANSAS 72716

PAY TO
THE ORDER OF DOLLY VOLE

ONE HUNDRED FORTY-FIVE DOLLARS TWENTY-NINE CENTS

DOLLY VOLE
1444 OLD SKOKIE RD
HIGHLAND PARK IL 60035

Senior Vice President, Finance and Treasurer

CHK# 85744885 ACT# 19341857 AMT 145.29 DT 12-18-2002 REC# 9103190870 ApID 3

AST BANK HIGHLAND PRK>07192260S<
HIGHLAND PRK IL 60035

07193026
12/19/02

0223409882    0222175113

DAVID A VELARDO & ASSOCIATES
FIRST BANK OF HIGHLAND PARK
FOR DEPOSIT ONLY

T/G 0

773-989-7455

WAL ★ MART
702 S.W. 8th St. BENTONVILLE, ARKANSAS 72716

**WAL★MART**

BANK OF BENTONVILLE
BENTONVILLE, ARKANSAS

PAY TO
THE ORDER OF DOLLY VOLE

DATE 12-20-2002
PAY THIS AMOUNT
****13453

CHECK VOID IF NOT CASHED
90 DAYS FROM DATE OF CHECK

ONE HUNDRED THIRTY-FOUR DOLLARS FIFTY-THREE
CENTS

CHECK NUMBER
08770493

01 GR                          A      J396868362
DOLLY VOLE
1448 OLD SKOKIE RD
HIGHLAND PARK          IL 60035

Senior Vice President, Finance and Treasurer

THIS DOCUMENT CONTAINS A COLORED BACKGROUND ON FACE AND ARTIFICIAL WATERMARK ON BACK. HOLD AT ANGLE TO VIEW.

⑈8770493⑈ ⑆08290701⑈          19341857⑈

SEQ: C006040

DOLLY VOLE                                              01GR

WAL ★ MART
702 S.W. 8th St.
Bentonville, AR 72716

| | SOCIAL SECURITY # | TAXES/DEDUCTIONS | YEAR TO DATE |
|---|---|---|---|
| | J396868362 | | |

| DESCRIPTION | RATE | HOURS | EARNINGS | YEAR TO DATE | | | |
|---|---|---|---|---|---|---|---|
| GARN PAYMENT | | | 13453 | 27982 | | | |

COWART, PAMELA G                                        00LM1512                          DOW = PPE

| | CURRENT | | | | | | |
|---|---|---|---|---|---|---|---|
| CURRENT | 13453 | 00 | 00 | = | 13453 | BEGIN 11-30-2002 | 08770493 |
| YEAR TO DATE | 27982 | | | = | 27982 | END 12-13-2002 | 1345 |
| | EARNINGS | TAXES | DEDUCTIONS | | NET PAY | PAY PERIOD | CHECK NUMBER / AMOUNT OF CHECK |

STATEMENT OF EARNINGS AND DEDUCTIONS · DETACH AND RETAIN FOR YOUR RECORDS

A-27

**WAL★MART**

W A L ★ M A R T C . . .
702 S.W. 8TH ST. BENTONVILLE, ARKANSAS 72716

BANK OF BENTONVILLE
BENTONVILLE, ARKANSAS

PAY TO
THE ORDER OF  DOLLY VOLE

DATE 01-17-2003
PAY THIS AMOUNT
X X X 12860

CHECK VOID IF NOT CASHED
90 DAYS FROM DATE OF CHECK

ONE HUNDRED TWENTY-EIGHT DOLLARS SIXTY CENTS

CHECK NUMBER
089098980

01 GR
DOLLY VOLE
1848B OLD SKOKIE RD
HIGHLAND PARK,       IL 60035

A       J396868362

Senior Vice President, Finance and Treasurer

THIS DOCUMENT CONTAINS A COLORED BACKGROUND ON FACE AND ARTIFICIAL WATERMARK ON BACK - HOLD AT ANGLE TO VIEW

⑈89098980⑈ ⑊08290701⑉ 19341857⑈

SEQ: W078144

DOLLY VOLE                                01GR

| | SOCIAL SECURITY # | WAL ★ MART |
| --- | --- | --- |
| | J396868362 | 702 S.W. 8th St. Bentonville, AR 72716 |

| DESCRIPTION | RATE | HOURS | EARNINGS | YEAR TO DATE | | TAXES/DEDUCTIONS | YEAR TO DATE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| GARN PAYMENT | | | 12860 | 53586 | | | |

COWART, PAMELA G                          00LM1512          DOW = PPE

| | EARNINGS | TAXES | DEDUCTIONS | NET PAY | | CHECK NUMBER | AUTO/CHG |
| --- | --- | --- | --- | --- | --- | --- | --- |
| CURRENT | 12860 | .00 | 00 = | 12860 | 12-28-2002 | 089098980 | 12861 |
| YEAR TO DATE | 53586 | | | 53586 | 01-10-2003 | | |
| | | | | | PAY PERIOD | | |

STATEMENT OF EARNINGS AND DEDUCTIONS • DETACH AND RETAIN FOR YOUR RECORDS